1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

KAREN BODDEN,

           Plaintiff,

    v.

JO GENTRY, *et al.*,

           Defendants.

Case No. 2:14-cv-01968-RFB-NJK

**<u>ORDER</u>**

This counseled § 2254 habeas petition is before the Court on respondents' motion to dismiss. ECF No. 41. Petitioner Karen Bodden, (hereinafter as "Boden") opposed, ECF No. 71, and respondents replied, ECF No. 76.

**I.**     **Procedural History and Background**

On January 22, 2008, a jury found Bodden guilty of one count of murder with use of a deadly weapon. Ex. 165. [1] The state district court sentenced her to life with the possibility of parole after 240 months, with a consecutive term of 48 to 120 months for the deadly weapon enhancement. Ex. 165. Judgment of conviction was entered on March 5, 2008. Id.

The Nevada Supreme Court affirmed Bodden's conviction on February 1, 2010, and remittitur issued on February 26, 2010. Exs. 201, 202.

The state district court conducted an evidentiary hearing on Bodden's counseled, state postconviction habeas corpus petition. Exs. 279, 280. The court thereafter denied the petition on

---

[1] Unless otherwise specified, the exhibits referenced in this order are exhibits to respondents' motion to dismiss (ECF No. 41) and are found at ECF Nos. 42–57, 59–61. The Court notes that respondents created unnecessary confusion by numbering their exhibits starting with exhibit 1 instead of continuing sequentially after the exhibits already on file in support of the amended petition.

1    January 3, 2013.  Ex. 290.  On October 17, 2014, the Nevada Supreme Court affirmed the denial

2    of the petition, and remittitur issued on November 13, 2014.  Exs. 336, 337.

3             This Court received Bodden's federal habeas petition on or about November 25, 2014.

4    ECF No. 7.  The Court appointed the Federal Public Defender as counsel for Bodden, and she filed

5    a counseled, amended petition.  ECF No. 18.

6             Respondents now argue that the amended petition does not relate back to any timely-filed

7    earlier petition, some grounds fail to state claims for which habeas relief may be granted, and some

8    claims are unexhausted.  ECF No. 41.

9    **II.      Legal Standards & Analysis**

10            **a.   Relation Back**

11            Respondents argue that the no claims raised in the amended petition relate back to

12   Bodden's first petition.  ECF No. 41.  A new claim in an amended petition that is filed after the

13   expiration of the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitation

14   period will be timely only if the new claim relates back to a claim in a timely-filed pleading under

15   Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the

16   same conduct, transaction or occurrence" as a claim in the timely pleading.  Mayle v. Felix, 545

17   U.S. 644 (2005).  In Mayle, the United States Supreme Court held that habeas claims in an

18   amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in

19   the original petition merely because the claims all challenge the same trial, conviction or sentence.

20   545 U.S. at 655–64.  Rather, under the construction of the rule approved in Mayle, Rule 15(c)

21   permits relation back of habeas claims asserted in an amended petition "only when the claims

22   added by amendment arise from the same core facts as the timely filed claims, and not when the

23   new claims depend upon events separate in 'both time and type' from the originally raised

24   episodes."  Id. at 657.  In this regard, the reviewing court looks to "the existence of a common

25   'core of operative facts' uniting the original and newly asserted claims."  A claim that merely adds

26   "a new legal theory tied to the same operative facts as those initially alleged" will relate back and

27   be timely.  Id. at 659 & n.5; Ha Van Nguyen v. Curry, 736 F.3d 1287, 1297 (9th Cir. 2013).  The

28   purpose of the relation back doctrine is to ensure that the respondent "has been given all the notice

that statutes of limitations were intended to provide." <u>Baldwin Cty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 150 n.3 (1984).

The relation back doctrine, in any context, "is to be liberally applied." <u>Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.</u>, 690 F.2d 1240, 1260 n.29 (9th Cir. 1982).  This liberality is amplified here by the less stringent pleading standards applied to *pro se* habeas petitioners.  <u>See</u> <u>Corjasso v. Ayers</u>, 278 F.3d 874, 878 (9th Cir. 2002).

Here, the Court received Bodden's federal habeas petition on November 25, 2014, and she filed her counseled, first-amended petition on June 2, 2016.  ECF Nos. 7, 18.  Three hundred thirteen days of the AEDPA one-year statute of limitations had elapsed when Bodden filed her original petition.  The statute of limitations thereafter expired about January 16, 2015, about sixth months before Bodden's counseled, first-amended petition was filed.  Accordingly, the claims in the first-amended petition must relate back to Bodden's original *pro se* petition in order to be deemed timely.

### i. **Original Petition**

Bodden set forth three grounds for relief in her original *pro se* petition.  ECF No. 7.

### 1. <u>Ground 1</u>

Bodden claimed violations of her rights to due process and effective assistance of counsel:

The DA claimed that I shot my husband Rob to death during an argument in his aircraft hangar on the morning of August 16, 2006.  Supposedly, I alone wrapped his 260-pound body in a moving quilt and plastic.  Supposedly I then used an engine hoist to lift his packaged body in to the back of his open bed F-350 pickup truck and then deposited his body, without burying it, less than 250 feet from a fairly well traveled dirt road.  The DA claimed the murder weapon was a small .22 handgun kept above the hangar restroom which was never found.  The claimed motive was that I took some community property money from his business account and that I was afraid he would report alleged "thefts" which would cause a violation of my probation.

My attorney had witnesses that would have testified that I was installing a large double waterfall made of cement composet [sic] all day on August 15th until after 9 p.m. and went to dinner after that.  I was worn out.  The next morning I was to return to job site for cleanup with my daughter but she was not ready so I switch [sic] my morning schedule with afternoon.  I met my daughter for lunch.  On the 17th I contracted with the other willing witnesses to build their pond

- 3 -

which I almost finished before I was arrested.  There were witnesses that I am not a violent person, have no experience with guns, and had no wish to kill Rob.  My attorney had a crime scene investigator available who could have explained how the crime couldn't have been done as claimed.  None of these witnesses were called.  My attorney put on no defense.

All he did was show that Rob told his accountant twice he would not report me even if it cost him money.  Rob helped my business financially.  I believe my attorney mentioned that had I killed Rob I would have used the backhoe I rented on August 25, 2006, to bury his body and not leave his body to be found.  I think he mentioned that there were no fingerprinting [sic] of the place and the box where the pistol supposedly was or the ladder up to it.  That was about all the defense I got.

Id. at 3–4.

### 2.   Ground 2

Bodden asserted that her rights to due process and effective assistance of counsel were violated:

When the police wanted to question me, I told them that Rob left to work on a drug dealer's planes.  Rob worked alone, did not like to be told what to do, and drank when he came home.  I knew his new job would not work out.  The testimony at trial was that he died instantly from a gunshot wound to the brain stem from the rear base of the skull and another to the right side of head above the ear.  I understand this was a professional type murder.

I understand why the drug dealers wanted it to look like I did it, it took attention away from their activities, the police wanted to blame me because I was available, that Rob's siblings wanted me convicted so they get all of his estate and that the airport people did not want the airport associated with drug dealers.  But I do not understand why my attorney did not want to use this in my defense.  He never even suggested that somebody else had a reason to kill Rob.

My assistant attorney told the judge why Rob really died in asking for a new trial, but that was too late.

Id. at 7.

### 3.   Ground 3

Bodden contended that her rights to due process, a fair trial, and effective assistance of counsel were violated:

During the twenty months I was in jail awaiting trial, many articles

- 4 -

concerning the case with information from the groups who prosecuted me were published in local newspaper.  Despite receiving two cartfuls of evidence to review, the jury found me guilty in only two hours over lunch.  I understand they left the courthouse immediately after trial was over.  They seemed mad at having to sit in a trial when everyone around "knew" I was guilty.

Why did my attorney do nothing about publicity and try to get me a fair trial?

Id. at 8.

Bodden attached the first page of the Nevada Supreme Court order affirming the denial of her state postconviction petition.  Id. at 10.  The Court notes that the attachment of this first page has no bearing on the original petition.  That is, this page, which does not even contain any specific facts related to Bodden's case or claims, does not serve to add any grounds to her original petition or set forth any additional factual allegations.  See, e.g., Baldwin v. Reese, 541 U.S. 27 (2004); Castillo v. McFadden, 399 F.3d 993, 1000 (9th Cir. 2005); Fed R. Civ. P. 10(c); Habeas Rule 2(c)(2).

### ii.  First-Amended Petition

Respondents argue that no claims in the first-amended petition relate back to Bodden's original petition.  ECF No. 41 at 5-6.

#### 1.  Ground 1

Bodden argues that trial counsel was ineffective for failing to present expert testimony to challenge the State's expert testimony, in violation of her Fifth, Sixth, and Fourteenth Amendment rights as follows:

(A) Trial counsel failed to present expert testimony from a forensic entomologist.

(B) Trial counsel failed to present expert testimony from a forensic pathologist.

(C) Trial counsel failed to present expert testimony from a forensic biologist.

(D) Trial counsel failed to present crime scene expert testimony.

(E) Trial counsel was ineffective for failing to present expert testimony refuting the State's theory that Bodden used a "cherry picker" to move her husband's body.

(F) Trial counsel was ineffective for failing to challenge, as junk science, the testimony that

1    the tire tracks found in the hangar matched those from Mr. Bodden's truck.

2    (G) Trial counsel was ineffective for failing to present evidence and testimony from an expert

3         familiar with drug smuggling.

4    ECF No. 18 at 22–39.

5         In ground 1 of the original petition, Bodden asserts that her attorney had a crime scene

6    investigator who could have explained how the crime could not have been committed as claimed.

7    ECF No. 7 at 4.  She continued: "[n]one of these witnesses were called.  My attorney put on no

8    defense."  Id.  Bodden also described that the district attorney's case included the theory that

9    Bodden somehow wrapped her husband's 260-pound body and used an engine hoist—also known

10   as a cherry picker—to move his body to the bed of his pick-up trick.  Id. at 3–4.  The amended

11   claims in grounds 1(A) through (F) share a common core of operative facts sufficient to relate back

12   to the original petition.  Thus, these grounds are timely.

13        In ground 1(G), Bodden claims that counsel failed to present evidence and testimony from

14   an expert familiar with drug smuggling.  Id. at 38–39.  Ground 1(G) shares a common core of

15   operative facts with the original petition, which details Bodden's theory that drug dealers were

16   responsible for the killing and that her attorney unreasonably did not use this theory in Bodden's

17   defense.  Ground 1(G) therefore is timely.

18                                    2.  Ground 2

19        Petitioner argues that trial counsel was ineffective for failing to investigate and present

20   exculpatory evidence regarding her poor mental health and cognitive limitations, in violation of

21   her Fifth, Sixth and Fourteenth Amendment rights.  ECF No. 18 at 40–44.

22        Ground 2 is not similar in type and time nor does it share a common core of operative facts

23   with any of the three grounds in the original petition.  Thus, ground 2 is untimely.

24                                    3.  Ground 3

25        Bodden asserts that the state district court improperly admitted unreliable mitochondrial

26   DNA evidence and then refused to permit trial counsel to fully cross-examine the State's expert

27   on its reliability and probative value.  ECF No. 18 at 44–52.

28   / / /

As petitioner correctly acknowledges, ground 3 is not similar in type and time nor does it share a common core of operative facts with any of the three grounds in the original petition. <u>See</u> ECF No. 71 at 32. Accordingly, ground 3 is untimely.

4. <u>Ground 4</u>

Bodden claims that trial counsel failed to adequately present a defense and failed to call six specific witnesses. The first three witnesses are as follows:

(A) Pascal Steeves, who would have confirmed Bodden was working on his pond in August 2006;

(B) Joan Reid, who would have confirmed that Bodden was working on her pond in August 2006 and that Bodden complained, prior to Mr. Bodden's death, that he was working on a drug dealer's airplane; and

(C) Bodden's son Bryan Allen, who would have testified that he was working with his mother on August 15, 2006.

ECF No. 18 at 53–57.

In ground 1 of her original petition, Bodden claimed that trial counsel failed to present witnesses who would have testified that she was installing a large double waterfall all day on August 15, 2006 (ECF No. 7 at 3). The amended petition merely specifies the names of these witnesses and specifies to what each would have testified. Grounds 4(A) – (C) relate back and are therefore timely.

The next three witnesses are as follows:

(D) Ray Entrop, who would have testified that he witnessed Mr. Bodden give Bodden permission to use his credit card;

(E) Fern Capra, who would have testified that she had personal knowledge of members of the Mexican Mafia living in the Carson City area; and

(F) James Kroeser, who would have testified that Mr. Bodden often worked on Golden Eagle 421 aircraft, the same type of plane Bodden said Ramos, a drug dealer, had.

ECF No. 18 at 58–59.

/ / /

- 7 -

Grounds 4(D) and 4(E) do not share any common core of operative facts with any grounds in the original petition.  They do not relate back and are therefore untimely.

Ground 4(F) relates back to Bodden's stance in her original petition that her attorney failed to present evidence that drug dealers were responsible for the killing.  Particularly, Bodden described in her petition that Mr. Bodden had been working on a drug dealer's airplane and argued that the attorney should have investigated the airport's association with drug dealers in Bodden's defense.  Ground 4(F) therefore relates back to the original petition and is timely.

5.  <u>Ground 5</u>

Bodden argues that trial counsel failed to investigate and present evidence of three alternative suspects:

(A) Ramos, a drug dealer, and/or Leonard Rocca, a client to whom Mr. Bodden owed a significant sum of money; or

(B) Bodden's daughter, Caroline Allen.

ECF No. 18 at 60–68.

In ground 2 of the original petition, Bodden contended that trial counsel failed to present evidence that Mr. Bodden was working on a drug dealer's airplane.  ECF No. 7 at 6.  Ground 5(A) relates back and is timely, as the alternative theories of the killing implicating Ramos and Rocca simply provide additional details as to Bodden's drug-related killing theory.

Nothing related to claims that Caroline Allen killed Mr. Bodden or that trial counsel was ineffective for failing to argue this theory is raised in the original petition.  Ground 5(B) therefore does not relate back and is untimely.

6.  <u>Ground 6</u>

Bodden asserts that trial counsel failed to object to testimonial statements admitted in violation of her Fifth, Sixth and Fourteenth Amendment rights to confront witnesses against her:

(A) Counsel failed to object to the admission of testimonial statements that Mr. Bodden made to his accountant, Lecia Nichols;

(B) Counsel failed to object to the admission of the "Dear Detectives" letter.

/ / /

- 8 -

ECF No. 18 at 68.  Bodden raises no claims in the original petition that share any common core of facts with ground 6 of the amended petition.  Ground 6 is thus untimely.

### 7.  Ground 7

Bodden argues that the trial court's refusal to change the venue, despite extensive pretrial publicity, violated Bodden's Fifth, Sixth, and Fourteenth Amendment due process rights.  ECF No. 18 at 73–75.  In the opposition to the motion to dismiss, Bodden correctly acknowledges that ground 7 does not relate back to the original petition.  ECF No. 71 at 36.  Ground 7 is untimely.

### 8.  Ground 8

Bodden claims that trial counsel failed to present the entire recorded conversation she had with her daughter, Caroline Allen, in violation of her Fifth, Sixth, and Fourteenth Amendment rights.  ECF No. 18 at 75–78.  She claims that the State admitted at trial only a brief portion of a phone call between Bodden and her daughter in which her daughter appears to question Bodden's innocence, but that the full half hour conversation contextualizes Bodden's ongoing friendly and nor1. mal relationship with her daughter.

While Bodden references her daughter in her original petition and suggests that her attorney could have elicited testimony from her daughter to support her innocence, she does not identify that any evidence related to her daughter was introduced, much less misleading or incomplete. Ground 8 does not share any common core of facts with the original petition and is therefore untimely.

### 9.  Ground 9

Bodden claims that insufficient evidence supported her conviction, in violation of her Fifth and Fourteenth Amendment rights.  ECF No. 18 at 78–83.  In ground 1 of Bodden's original petition, she sets forth what she argues is the district attorney's unsupported, incredible theory of how she committed the murder and argues that her due process rights were violated.  Ground 9 sufficiently relates back to the original petition and is therefore timely.

### 10. Ground 10

Bodden's asserts that her conviction and sentence are invalid under the federal constitutional guarantees of due process and freedom from cruel and unusual punishment in

- 9 -

violation of the Fifth, Eighth, and Fourteenth Amendments.  ECF No. 18 at 83–86.  Bodden correctly acknowledges that this claim is distinct from any raised in her original petition.  ECF No. 71 at 38.  Ground 10 is untimely.

### 11. Ground 11

Bodden argues that the cumulative effect of the errors in this case violated Bodden's Fifth and Fourteenth Amendment rights to due process.  ECF No. 18 at 86–87.   Ground 11 clearly relates back to the extent that it raises a claim of cumulative error as to grounds still before this Court for consideration.

The Court also notes here that this claim is cognizable as a matter of pleading and survives the motion to dismiss.  Bodden correctly contends that prejudice may result from the cumulative impact of multiple deficiencies.  See Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) ("[T]he combined effect of multiple trial errors violates due process where it renders the resulting criminal trial fundamentally unfair."); Harris By & Through Ramseyer v. Wood, 64 F.3d 1432, 1438 (9th Cir. 1995).

Accordingly, the claims set forth in the following grounds relate back and are timely:  grounds 1(A) – (G); grounds 4(A) – (C) & (F); ground 5(A); ground 9; and ground 11.  The following grounds do not relate back: ground 2; ground 3; grounds 4(D) – (E); ground 5(B); grounds 6 – 8; and ground 10.

### b.  Actual Innocence

Bodden argues that this Court should still consider any untimely grounds because she is actually innocent of her husband's murder.  ECF No. 71 at 40–45.  A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims.  Schlup v. Delo, 513 U.S. 298 (1995); House v. Bell, 547 U.S. 518 (2006).  In McQuiggin v. Perkins, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." 133 S. Ct. 1924, 1928 (2013).  The Court emphasized that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless

1    he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would

2    have voted to find him guilty beyond a reasonable doubt.'" Id. (quoting Schlup, 513 U.S. at 329);

3    see House, 547 U.S. at 538 (emphasizing that the Schlup standard is "demanding" and seldom

4    met). The Ninth Circuit concluded in Griffin v. Johnson that "[n]ew" evidence is evidence that is

5    newly presented—it need not be newly discovered. 350 F.3d 956, 963 (9th Cir. 2003). Recently,

6    however, the Ninth Circuit has noted that Justice O'Connor's concurrence in Schlup may set forth

7    the controlling definition of "new evidence." Pratt v. Filson, WL 3327889 (9th Cir. August 4,

8    2017) (unpublished). O'Connor wrote in Schlup that she understood the Court's holding to be that

9    "new evidence" is "newly *discovered* evidence." 513 U.S. at 332.

10       In assessing a Schlup gateway claim, "the timing of the [petition]" is a factor bearing on

11   the "reliability of th[e] evidence" purporting to show actual innocence. Schlup, 513 U.S. at 332;

12   McQuiggin, 133 S. Ct. at 1936 ("Focusing on the merits of a petitioner's actual-innocence claim

13   and taking account of delay in that context, rather than treating timeliness as a threshold inquiry,

14   is tuned to the rationale underlying the miscarriage of justice exception–*i.e.*, ensuring that federal

15   constitutional errors do not result in the incarceration of innocent persons." (internal quotations

16   and citations omitted)).

17       Respondents argue that Bodden has not presented any "reliable" new evidence of

18   innocence, Schlup, 513 U.S. at 324; Carriger v. Stewart, 132 F.3d 463, 482 (9th Cir. 1997), and

19   therefore, she cannot overcome the untimeliness of her petition based on an actual innocence claim.

20   ECF No. 76 at 25–31.

21       Bodden contends that she has several pieces of reliable new evidence of her innocence.

22   First, she argues that she has evidence that her husband was likely killed weeks after he went

23   missing based on a report by a forensic entomologist written on November 7, 2007 (petitioner's

24   exhibit 216B).[2]  The report assumes that the insects recovered were the first generation of insects

25   that began as eggs inside the victim's dead body. The report states that the recovered samples can

---

[2] Petitioner's exhibits in support of the amended petition, ECF No. 18, are found at ECF
Nos. 19–33, 35.

establish the "minimum time frame for infestation."  Id. at 2.  Respondents argue that the author of the report merely opines that, at a minimum, the body was first available for insect activity on August 29-30 based on the lifecycle for the insects that were recovered on or after September 10, 2007, but if the insects that were recovered were second or third-generation insects, the time of death would have been earlier in the month of August.  Bodden's defense counsel testified at the evidentiary hearing on the state postconviction petition that the expert had told him that the expert could not determine the time of death with any accuracy because the body had not been completely buried, part of it was exposed and no one knew when it had been exposed.  Ex. 218 at 108. Bodden's counsel thus chose not to present the forensic entomologist testimony to the jury.  Id. The report is not reliable evidence of innocence such that no reasonable juror could have convicted Bodden.

Bodden also asserts that she has evidence that contradicts the testimony of a State witness who opined based on his experience that the small caliber of bullet used to kill the victim would not cause a lot of blood.  ECF No. 71 at 44.  Respondents point out that Bodden's allegedly contrary evidence is an email from a retained expert who told defense counsel, before trial, that he would need to do further research to determine whether he could offer an opinion that the wounds on the victim would have bled significantly.  Pet. Ex. 216D.  The Court agrees that this is not reliable evidence of innocence.

Bodden next argues that she has evidence that it is highly unlikely that there would be no blood detected in the airplane hangar if the victim was killed there.  ECF No. 71 at 44.  Bodden bases this conclusion on the post-trial 2016 opinion of forensic scientist Elizabeth Johnson that "the crime scene examiners were very thorough in testing numerous areas and items."  Pet. Ex. 251 at 4.  Johnson describes the "extremely sensitive techniques" that Washoe County Sheriff's Office laboratory reports and documents reflect were used in the examination of the hangar, cherry picker, and Mr. Bodden and Bodden's automobiles.  Id. at 2. Johnson notes: "[i]n my opinion, the crime scene examiners were very thorough in testing numerous areas and items that may have blood deposited either directly or by transfer."  Id. at 4.  Johnson observed that the fact that no blood was detected did not corroborate the State's theory of the murder.  While this is and was

- 12 -

1    helpful to Bodden's defense, the State never alleged that its experts used inaccurate tests for blood,

2    this evidence does not impeach any witnesses, and it is not reliable evidence of innocence.

3         Bodden contends that she has evidence that the state's theory about how she killed the

4    victim and moved his body with an engine hoist was far-fetched and would be exceedingly

5    difficult.  ECF No. 71 at 44.  Yet respondents are correct that Bodden merely alleges without

6    support that "[s]omeone familiar with the mechanics of a hydraulic lift could have testified that it

7    would have been very difficult, if not impossible, to use the lift to move a 260-pound body."  ECF

8    No. 18 at 35.  This unsupported bare allegation is not reliable evidence of innocence.

9         Bodden asserts that she has evidence that the expert testimony that the tire tracks in the

10   hanger matched those of the victim's truck was junk science.  ECF No. 71 at 44.  She bases this

11   conclusion only on a generic report by the National Research Council titled "Strengthening

12   Forensic Science in the United States: A Path Forward."  ECF No. 18 at 36.  The State's expert at

13   trial, a Nevada Highway patrolman who was a certified accident reconstructionist, testified: "I was

14   asked to identify a tread pattern in comparison to the tires that were on the Ford pickup."  Pet. Ex.

15   121 at 1076.  He opined that the tire marks on the hangar floor were similar to the tires on the Ford

16   F-350 pick-up truck and stated that "[i]t was my opinion that those were the same tires."  Id. at

17   1085, 1087.  In other words, he testified that Mr. Bodden's truck had the same tread pattern as the

18   tracks found in the hangar.  Respondents argue that the report Bodden cites specifically states that

19   class characteristics of tires can be identified, and that, with sufficiently distinctive patterns of

20   wear, individualized identification can also be made.  ECF No. 76 at 27.  They also point out that

21   the report simply alleges that there is not an agreement on how distinctive the patterns need to be

22   for individualized identification.  Id.  The report does not demonstrate that the expert's opinion

23   that the truck had the same tread pattern was "junk science."  The report's conclusion that there is

24   not a consensus about how distinctive a pattern of wear needs to be to make an individualized

25   identification does not necessarily demonstrate that the expert's opinion was unreliable.

26   Moreover, the report is certainly not reliable evidence of innocence.

27        Next, Bodden argues that she has evidence that her husband's death was consistent with a

28   drug dealing "hit."  ECF No. 71 at 44.  The private investigator/gang expert whose opinion Bodden

invokes was a former police officer in Indio, California, about 500 miles from the crime scene in Minden, Nevada.  He opines based on his training and experience that because the victim was shot in the head and dumped in the desert off a major thoroughfare in Douglas County serving thousands of people living in nearby homes, the victim's murder was "consistent with a 'execution style' hit."  Pet. Ex. 252.  He makes several general (and arguably, common-sense) observations such as that there could have been several reasons why Bodden was murdered if he was involved with drug/narcotic activity, that being an airplane mechanic is a "valuable trait," that people involved in drug trafficking usually do not tell other people they are involved with drug dealers, and that drug traffickers frequently use smaller airplanes and smaller air strips and airports to avoid detection by law enforcement.  Id.  Bodden's proffered gang expert's report is not reliable evidence of innocence or even reliable evidence that the victim's death was consistent with a drug dealing "hit."  The jury determined that, based on the evidence presented at trial, the victim's death was consistent with Bodden murdering him.  Speculative evidence supporting an alternative theory of murder is not evidence of innocence.

Bodden also contends that she has evidence that she "had cognitive and memory deficits, which would have explained her inconsistent statements to the police and belied the State's theory that she masterminded a murder and managed to leave no trace."  ECF No. 71 at 44.  The forensic psychiatrist who examined Bodden years after she was convicted as part of her state postconviction proceedings did not provide any evidence of innocence in her September 5, 2012 testimony during the state postconviction evidentiary hearing.  Pet. Ex. 217.  The forensic psychiatrist did not testify that Bodden was unable to murder the victim.  The Court agrees with respondents that the testimony was not reliable evidence of innocence.

Bodden asserts that she has evidence that she was working during the time the State theorized the victim was killed.  ECF No. 71 at 44.  Bodden states that Pascal Steeves could have testified at trial, as he did six years later during the state postconviction evidentiary hearing, that Bodden worked "every day that week the 14th through the 18th."  ECF No. 18 at 55.  However, Steeves testified at that hearing that he "didn't observe the time she came and left as this was a fixed price job."  Pet. Ex. 217 at 187.  On cross-examination, Steeves stated he had no recollection

1    if Bodden was at his house on August 15th.  Id. at 194.  Steeves's evidentiary hearing testimony

2    is not reliable evidence of innocence.

3          Bodden also states that Joan Reid would have testified that Bodden was working on her

4    pond beginning August 17, 2006 and she worked on that pond "fairly frequently."  ECF No. 18 at

5    55–56.  Reid testified at the state postconviction hearing that she could not give an estimate

6    whether Bodden would show up daily or even biweekly because she "wasn't home most of the

7    week."  Pet. Ex. 217 at 70.  This is not reliable evidence of innocence.

8          Bodden also asserts that her son, Bryan Allen, would have testified that he was working

9    with Bodden on August 15, 2006.  ECF No. 18 at 57.  Allen testified at the state postconviction

10   evidentiary hearing that during the summer of 2006, he worked a masonry job and when he

11   finished around 3:00 p.m. he would go and work for his mother, helping her with her ornamental

12   pond installation business.  Ex. 217 at 39.  On direct, Allen testified that on August 15, 2006, he

13   worked with his mom after he finished his masonry job in the afternoon until dark and then after

14   he went to dinner with his mother and sister.  Id.  On cross-examination, Allen acknowledged that

15   he did not have a recollection of the exact date he worked on the pond until after he discussed the

16   matter with Bodden's post-conviction counsel.  Id. at 51.  Even that Allen's testimony is accurate,

17   it does not mean that Bodden could not have committed the crime during a different timeframe,

18   and it is not reliable evidence of innocence.

19         Finally, Bodden contends that she has evidence that her husband had given her permission

20   to use his credit card.  ECF No. 71 at 45.  She appears to reference her trial counsel's testimony at

21   the state postconviction evidentiary hearing.  While not entirely clear, trial counsel refers to a

22   statement by one of the State's investigators that a person named Ray Entrop had said that the

23   victim authorized Bodden to use his credit card to buy a cement machine.  Compare ECF No. 18

24   at 58 with Pet. Ex. 217 at 139. There is no testimony or affidavit from Ray Entrop.  Respondents

25   point out that even if Bodden had presented testimony or an affidavit from Ray Entrop that the

26   victim authorized Bodden to purchase an expensive cement machine with his credit card, that is

27   not reliable evidence of his innocence, but would merely be evidence that on one occasion the

28   victim authorized Bodden to use his credit card.

In sum, even after considering all the evidence, both new and old, it cannot be said that a reasonable juror would not have convicted Bodden. She has not met her burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted [her] in the light of the new evidence." Schlup, 513 U.S. at 327. Accordingly, Bodden's argument that she is actually innocent is not a basis for this Court to consider her untimely claims. Ground 2; ground 3; grounds 4(D) – (E); ground 5(B); grounds 6–8; and ground 10 are dismissed as untimely.

### c. Exhaustion

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. Rose v. Lundy, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999); see also Duncan v. Henry, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. See Casey v. Moore, 386 F.3d 896, 916 (9th Cir. 2004); Garrison v. McCarthey, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." Picard v. Connor, 404 U.S. 270, 276 (1971). The federal constitutional implications of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion. Ybarra v. Sumner, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing Picard, 404 U.S. at 276)). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. Duncan v. Henry, 513 U.S. 364, 365 (1995); see Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." Jiminez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001) (quoting Rose v. Lundy, 455 U.S. 509, 520 (1982)). "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a

1    fair trial, are insufficient to establish exhaustion."  Hiivala, 195 F.3d at 1106.  However, citation

2    to state case law that applies federal constitutional principles will suffice.  Peterson v. Lampert,

3    319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

4            A claim is not exhausted unless the petitioner has presented to the state court the same

5    operative facts and legal theory upon which his federal habeas claim is based.  Bland v. California

6    Dept. Of Corrections, 20 F.3d 1469, 1473 (9th Cir. 1994).  The exhaustion requirement is not met

7    when the petitioner presents to the federal court facts or evidence which place the claim in a

8    significantly different posture than it was in the state courts, or where different facts are presented

9    at the federal level to support the same theory.  See Nevius v. Sumner, 852 F.2d 463, 470 (9th Cir.

10   1988); Pappageorge v. Sumner, 688 F.2d 1294, 1295 (9th Cir. 1982); Johnstone v. Wolff, 582 F.

11   Supp. 455, 458 (D. Nev. 1984).

12                  1.   Ground 4(A) – (C) & (F)

13           In ground 4, Bodden claims that trial counsel failed to adequately present a defense and

14   failed to call the following witnesses: (A) Pascal Steeves, who would have confirmed Bodden was

15   working on his pond in August 2006; (B) Joan Reid, who would have confirmed that Bodden was

16   working on her pond in August 2006, and that Bodden complained, prior to her husband's death,

17   that he was working on a drug dealer's airplane; (C) Bodden's son Bryan Allen, who would have

18   testified that he was working with his mother on August 15, 2006; and (F) James Kroeser, who

19   would have testified that Mr. Bodden often worked on Golden Eagle 421 aircraft, the same type

20   of plane Bodden said Ramos, a drug dealer, had.  ECF No. 18 at 53–60.[3]

21           Bodden fairly presented grounds 4(A) – (C) to the Nevada Supreme Court, and therefore,

22   these claims are exhausted.  Ex. 324 at 21–23.

23           The Court has reviewed Bodden's opening brief on appeal of the denial of her state

24   postconviction petition and the Nevada Supreme Court's affirmance of the denial.  Exs. 324, 336.

25   Bodden did not fairly present ground 4(F) to the Nevada Supreme Court.  Accordingly, this claim

26   is unexhausted and dismissed.

27   _____

28           [3] As discussed above, grounds 4(D) and (E) are dismissed on relation back grounds.

1                  2.   <u>Ground 5(A)</u>

2          Bodden asserts that trial counsel failed to investigate and present evidence of an alternative

3 suspect like Ramos, a drug dealer.  ECF No. 18 at 60–63.  This claim is exhausted.  Ex. 324 at 16.

4                  3.   <u>Grounds 1(A) – (G)</u>

5          Respondents contend that grounds 1(A) through (G) are unexhausted.  Again, in those

6 grounds, Bodden argues that trial counsel was ineffective for failing to present the following to

7 challenge the State's expert testimony: (A) a forensic entomologist; (B) a forensic pathologist; (C)

8 a forensic biologist; (D) a crime scene expert; (E) an expert to refute the State's theory that Bodden

9 used a "cherry picker" to move her husband's body; (F) evidence challenging, as junk science, the

10 testimony that the tire tracks found in the hangar matched those from Mr. Bodden's truck; and (G)

11 evidence and testimony from an expert familiar with drug smuggling.  ECF No. 18 at 24–39.

12          Bodden did not fairly present any of grounds 1(A) through (G) to the Nevada Supreme

13 Court.  Exs. 324, 336.  Accordingly, these claims are unexhausted.

14          Bodden argues that if these claims are unexhausted, the Court should deem them

15 "technically exhausted" because if she returned to state court with these claims, they would be

16 procedurally defaulted as untimely and successive.  <u>See</u> 28 U.S.C. §2254(b)(1)(B).  "Procedural

17 default" refers to the situation where a petitioner in fact presented a claim to the state courts but

18 the state courts disposed of the claim on procedural grounds, instead of on the merits.  A federal

19 court will not review a claim for habeas corpus relief if the decision of the state court regarding

20 that claim rested on a state law ground that is independent of the federal question and adequate to

21 support the judgment.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 730-31 (1991).

22          The <u>Coleman</u> Court explained the effect of a procedural default:

23
24
25
26
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

27
28

501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 485 (1986).  The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases.  See Koerner v. Grigas, 328 F.3d 1039, 1046 (9th Cir. 2003).

To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" her efforts to comply with the state procedural rule.  Murray, 477 U.S. at 488 (emphasis added).  For cause to exist, the external impediment must have prevented the petitioner from raising the claim.  See McCleskey v. Zant, 499 U.S. 467, 497 (1991).

 "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."  Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012) (citing Coleman, 501 U.S. at 750).  Bodden states that she can demonstrate cause and prejudice to overcome a procedural default of the unexhausted claims.

However, generally, following a holding that the petition contains unexhausted claims, the petition must be dismissed unless the petitioner either dismisses the unexhausted claims and/or obtains a stay to exhaust the claims.  See Rose, 455 U.S. 509; Rhines v. Weber, 544 U.S. 269 (2005) (requirements for a stay); King v. Ryan, 564 F.3d 1133 (9th Cir. 2009) (alternative stay procedure available under Ninth Circuit precedent).

A claim is technically exhausted if it is procedurally defaulted.  See, e.g., Nguyen v. Curry, 736 F.3d 1287, 1292 (9th Cir. 2013).  That does not signify, however, that a claim is technically exhausted merely because a procedural defense would be *raised* by the respondents if petitioner returned to state court to exhaust a claim.  The record instead must reflect that "it is clear that the state court would hold the claim procedurally barred."  Sandgathe v. Maass, 314 F.3d 371, 376 (9th Cir. 2002).

In federal habeas cases arising out of Nevada, the state courts, generally, apply substantially the same standards as do the federal courts in determining whether a petitioner can demonstrate either cause or actual innocence in order to overcome a claimed procedural default.[4]

---

[4] Under state practice, "[a] petitioner can overcome the bar to an untimely or successive

Generally, habeas petitioners cannot claim technical exhaustion by procedural default while at the same time arguing that they nonetheless can establish cause and prejudice or actual innocence to overcome that procedural default.  If the petitioner has a potentially viable cause-and-prejudice or actual-innocence argument under the generally substantially similar federal and state standards, then petitioner cannot establish that "it is clear that the state court would hold the claim procedurally barred."  Sandgathe, 314 F.3d at 376.  If, however, the petitioner has no such potentially viable arguments, then the claim indeed is technically exhausted, but it also is subject to immediate dismissal with prejudice as procedurally defaulted.

Neither alternative involves a federal court consideration of cause-and-prejudice or actual-innocence arguments.  In the first alternative, the claim remains unexhausted; and petitioner either must dismiss the unexhausted claim or obtain a stay to exhaust.  In the second alternative, the concession that the petitioner has no viable arguments renders the claim technically exhausted but also renders the claim subject to immediate dismissal because there are no potentially viable cause-and-prejudice or actual-innocence arguments for the federal court to consider.  Accordingly, the Court generally does not proceed to a cause-and-prejudice analysis as a matter of course following a holding that a claim is unexhausted.

A different situation is presented, however, where the Nevada state courts do not recognize a potential basis to overcome the procedural default arising from the violation of a state procedural rule that is recognized under federal law.  In Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court held that the absence of or inadequate assistance of counsel in an initial-review collateral proceeding may be relied upon to establish cause excusing the procedural default of a claim of ineffective assistance of trial counsel.  The Supreme Court of Nevada has declined to recognize

petition by showing good cause and prejudice." E.g., Mitchell v. State, 149 P.3d 33, 36 (Nev. 2006).  In Robinson v. Ignacio, 360 F.3d 1044 (9th Cir. 2004), the court of appeals recognized that "Nevada's 'cause and prejudice' analysis and the federal 'cause and prejudice analysis' are nearly identical, as both require 'cause for the default and actual prejudice as a result.'"  360 F.3d at 1052 n.3.  Moreover, the Nevada state courts also recognize the same exception for a fundamental miscarriage of justice, such that "[e]ven when a petitioner cannot show good cause sufficient to overcome the bars to an untimely or successive petition, habeas relief may still be granted if the petitioner can demonstrate that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  Mitchell, 149 P.3d at 36 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

cause under <u>Martinez</u> as cause to overcome a state procedural bar under Nevada state law.  <u>Brown</u> <u>v. McDaniel</u>, 331 P.3d 867 (Nev. 2014).

Accordingly, a Nevada habeas petitioner who can rely upon <u>Martinez</u>, and only <u>Martinez</u>, as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that she nonetheless has a potentially viable cause-and-prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars.

In the present case, Bodden has invoked <u>Martinez</u> to overcome a procedural default of the unexhausted ineffective assistance of trial counsel claims in grounds 1(A) – (G).  It appears that Bodden has no other potentially viable bases for demonstrating cause and prejudice that might be recognized by the state courts and that thus would preclude a finding of technical exhaustion by procedural default as to the unexhausted claims.

Accordingly, respondents' motion to dismiss is denied without prejudice as to grounds 1(A) – (G).  The Court shall defer an analysis of cause and prejudice under <u>Martinez</u> until after the filing of an answer and reply that address both cause and prejudice and the claims on the merits. The Court may then have the benefit in its analysis of a full factual and legal presentation as to all relevant claims.[5]

/ / /

/ / /

/ / /

---

[5] The Court notes that the action taken herein is premised upon petitioner having a potentially viable cause-and-prejudice argument based upon <u>Martinez</u>, and only <u>Martinez</u>, as opposed to having also potentially viable cause-and-prejudice arguments based upon grounds that the state courts would recognize. If petitioner begins arguing any such additional cause-and-prejudice arguments herein, that immediately will "kick" this case back into a procedural posture where the next step instead is dictated by <u>Rose v. Lundy</u> and its progeny. That is, the Court's action is taken on the premise that the unexhausted claims are technically exhausted by procedural default because petitioner has no potentially viable cause-and-prejudice (or actual-innocence) arguments that the state courts would recognize as a basis for overcoming the state procedural bars.

1

### III.     Conclusion

2       **IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 41) is

3   **GRANTED in part** and **DENIED in part** as follows:

4        Ground 2; ground 3; grounds 4(D) – (E); ground 5(B); grounds 6 – 8; and ground 10 are

5   **DISMISSED** as time-barred.

6       Grounds 4(A) – (C) and ground 5(A) are exhausted.  Ground 4(F) is **DISMISSED** as

7   unexhausted.

8       Analysis of grounds 1(A) – (G) is deferred as set forth in this order.  Grounds 4(A) – (C),

9   ground 5(A), ground 9, and ground 11 may proceed.

10       **IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** to file an

11   answer to the amended petition.

12       **IT IS FURTHER ORDERED** that petitioner shall have **thirty (30) days** after the date

13   of service of the answer in which to file the reply in support of the petition.

14

15       DATE: <u>May 14, 2020</u>.

16

17   _____

18   RICHARD F. BOULWARE, II
     UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28